# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

In re ) Chapter 11 Proceedings
)
**T & H CONSTRUCTION, INC.,** ) Case No: 3:14-bk-09452-DPC
)
Debtor. ) **ORDER DENYING**
) **CONFIRMATION OF DEBTOR'S**
) **CHAPTER 11 PLAN OF**
) **REORGANIZATION**
)

T & H Construction, Inc. ("Debtor") moves the Court to confirm its chapter 11 Plan of Reorganization (DE 50) as modified (DE 108) ("Plan"). New York Community Bank ("Bank") opposes confirmation (DE's 78, 106). The parties submitted briefing and the Court heard argument, after which it took the matter under advisement (DE 136). The Court now denies confirmation of the Plan.[1]

Factual Background

Debtor is a contractor located in Prescott, Arizona. Debtor filed its small-business chapter 11 petition on June 19, 2014 (DE 1). Debtor's Schedule D reflects the Bank as Debtor's only secured creditor. On September 5, 2014, the Bank filed a Proof of Claim (Claim # 15) for approximately $1.09 million, representing the balance of the Bank's loan to Debtor and Debtor's principals, who are co-borrowers. The loan is secured by Debtor's real and personal property. Some of the Bank's personal property collateral has been sold and the proceeds paid to the Bank. The Bank has also foreclosed 2 of its 4 parcels of real property collateral (DE 126). The remaining 2 parcels of real property collateral (collectively the "Commercial Property") are at the heart of the dispute between the Bank and Debtor. One parcel is approximately .38 acres and is owned by the Debtor. Another approximately 2.5 acres is owned by the Debtor's principals and is adjacent to the estate's .38 acres. The Bank is presently

---
[1] The Court has jurisdiction over this core proceeding under 28 U.S.C. § 157(b)(2)(L).

1 unwilling to foreclose its liens on the Commercial Property because it is concerned
2 about possible environmental conditions on that property (DE's 95, 106). Debtor
3 disputes the materiality of the potential environmental conditions and argues that any
4 environmental issues go to the value of the property.  Debtor contends the Bank could
5 and should be forced to foreclose its liens or accept title to the Commercial Property or
6 at least reduce its overall claim by the fair value of the Commercial Property.

7 Debtor has filed and seeks to confirm its "dirt for debt" Plan which calls for: (1)
8 liquidation of Debtor's personal property assets, (2) the Bank's (a) acceptance of a deed
9 in lieu of foreclosure on the Commercial Property, or (b) the Bank's foreclosure on the
10 Commercial Property, or (c) reduction of the Bank's claim by the fair value of the
11 Commercial Property, (3) determining the value of the Commercial Property in state
12 court,  and (4) Debtor's payment of any deficiency on the secured claim using funds
13 from the liquidated personal property collateral, in full satisfaction of the Bank's claim
14 against Debtor.  Debtor's appraisal values the Commercial Property at $750,000, while
15 the Bank's appraisal values it at $360,000.

16 The provision of Debtor's Plan in controversy states:

> If the Bank does not complete its foreclosures of any one or more parcels comprising the Real Property Collateral  (the "Remaining Collateral")  within 60 days after the Effective Date, the Debtor may either (i) lodge an order with the bankruptcy court compelling the Bank to do so (in which event the above-described provisions for determining the Bank's  deficiency  claim under A.R.S. §33-814(A)  shall apply); or (ii) elect to cause deed(s) for the Remaining Collateral to be tendered  to the Bank (or its designated nominee), in which event the Debtor shall  be entitled to a credit against the Bank's  claim in the amount of such collateral's fair market value (as that term is used in A.R.S. §33-814(A))  as of the date of tender. (DE 108, page 2).

<u>Issue</u>

Whether the Plan is "fair and equitable" to the Bank, within the meaning of

§1129(b)(2)(A), where the Plan forces the Bank to (a) foreclose on the Commercial Property or (b) accept deeds to the Commercial Property or (c) reduce the Bank's claim by the fair value of the Commercial Property, whether or not it forecloses its liens or takes title to the Commercial Property.

Analysis

The Court doubts its authority to confirm a cram-down plan that forces a secured creditor to accept its collateral and/or reduce its claim against both the Debtor and third-party obligors in the amount of the yet-to-be-determined value of the Commercial Property, all under the guise of providing the secured creditor the § 1129(b)(2)(A) "indubitable equivalent" of its secured claim.[2] Debtor cites *Victor Gruen Assocs., Inc.*, 338 F.2d 826 (9th Cir. 1964) for the proposition that it is within the Court's equitable powers to confirm such a plan. In *Victor Gruen*, the Ninth Circuit held that when a debtor has two creditors, one which can reach two assets and one which can reach only one, equity "require[s] the creditor who can reach both funds, if it can be done without prejudice to him or inequity to third parties, to look first to the fund which cannot be reached by the other creditor." *Id.* at 829 (citing *Meyer v. United States*, 375 U.S. 233, 236-237, 84 S. Ct. 318 (1963)). In the Bank's case, the "fund" that the other creditors cannot reach is the real property. This equitable doctrine is known as "equitable marshalling," or "marshalling of assets."

Debtor urges the Court to confirm the Plan so that it can make a meaningful distribution to its unsecured creditors, whose sole source of recovery under the Plan is the money available after the Bank's collateral is liquidated or the Bank is forced to foreclose or accept the value of its Commercial Property collateral as a reduction in its overall claim against the Debtor and its principals. Forcing the Bank to reduce its

---

[2] All section numbers refer to title 11 of the United States Code unless referenced otherwise.

secured claim by the value of the Commercial Property, regardless of whether the Bank wants the Commercial Property or agrees to reduce its claim by such value, is inequity/prejudice under *Victor Gruen*. For this reason, the Plan does not meet the requirements to impose equitable marshalling upon the Bank.

Debtor has cited no case explicitly supporting its proposition that the Court may confirm a plan which requires the Bank take such action. Instead, the Debtor argues the Court can and should partially disallow or equitably subordinate the Bank's secured claim, under sections 502(b) and 510(c), respectively, if the Bank refuses to foreclose. The Bank argues that it negotiated for the discretion to decide when or whether to foreclose, the right to first seek payment from Debtor's principals, and that Debtor waived its equitable marshalling defense when it signed the Deed of Trust. See the Bank's Brief in Opposition to Plan, 5:18-22. The Court agrees with the Bank that the Plan's proposed treatment of its claim is not "fair and equitable" under *Victor Gruen* or any other authority Debtor cites.

Conclusion

The Court has neither the authority nor the inclination to impair a secured creditor's bargained-for rights by disallowing or subordinating part of its claim, while potentially exposing it to environmental liabilities, even if the net result was to return more to general unsecured creditors. Accordingly, the Debtor's Plan, as currently conceived, must be denied.[3]

Based on the foregoing,

---

[3] However, the Debtor could devise a plan which divides the Bank's claim into (a) a secured claim to the extent of the value of the Commercial Property plus the remainder of the Bank's personal property collateral and (b) a general unsecured claim to the extent of the balance of the Bank's allowed claim. The secured claim could then be handled by either the Debtor's sale of its collateral (with the proceeds paid to the Bank) or delivery to the Bank of its collateral. Delivery of the collateral to the Bank would satisfy § 1129(b)(2)(A)'s "indubitable equivalent" standard as to the bank's secured claim, whether or not the Bank accepted such delivery. But, of course, such treatment of the Bank's secured claim in a plan would not serve as a pay down of the Bank's claims as to the non-debtor obligors unless the Bank accepted the deeds to the Commercial Property.

IT IS ORDERED denying confirmation of Debtor's Plan without prejudice.

**Dated: February 3, 2015.**

_Daniel P. Collins_
DANIEL P. COLLINS
CHIEF UNITED STATES BANKRUPTCY JUDGE

COPY of the foregoing mailed by the BNC and/or
sent by auto-generated mail to interested parties.